James A. Hennefer (SBN 59490)
HENNEFER, FINLEY & WOOD, LLP
Embarcadero West
275 Battery Street, Second Floor
San Francisco, CA 94111
Telephone: (415) 421-6100
Facsimile: (415) 421-1815
jhennefer@hennefer-wood.com

Special Counsel for Plaintiff-Appellee
Mohamed Poonja

IN THE UNITED STATES COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:
SAN JOSE AIRPORT HOTEL, LLC, dba
HOLIDAY INN SAN JOSE,
MOBEDSHAHI HOTEL GROUP,

MOHAMED POONJA,

        Plaintiff-Appellee

vs.

CHANDRAKANT SHAH

        Defendant-Appellant

Case No. 17-cv-00858  EJD

(Appeal from *Poonja v. Sevak & Sons,
L.P. et al.* (*In re San Jose Airport Hotel, LLC,*
U.S. Bankruptcy Court, N. Dist. Calif.
(San Jose) Case No. 09-51045-SLJ
Jointly Administered with 09-51073-SLJ);
Adv. Pro. No. 11-05236)

**PLAINTIFF-APPELLEE'S REPLY  BRIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION AND SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES ARGUED IN SHAH REPLY BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   Legal Tests in California for "Causation" of Damages
     Resulting from Contract Breach. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.   The Trial Court Did Not "Ignore" This Court's Remand Order. . . . . . . . . . . . . . . . 4

     B.   Standard for Causation in a Breach of Contract Case Is Contained
          in California Civil Code § 3300 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   The "Foreseeability" Standard
          – The Law in California Contract Breach Cases.. . . . . . . . . . . . . . . . . . . . . . . 6

     D.   The "Substantial Factor" Standard is Widely Recognized in California
          and Applied  Where Multiple Factors *Might* Cause Injury. . . . . . . . . . . . . . . . . 7

     E.   "Legal Causation" and Actual --"But For" -- Causation . . . . . . . . . . . . . . . . . . 9

     F.   Factual Findings on Causation by Trial Court on Remand. . . . . . . . . . . . . . . . . 10

     G.   Plaintiff's Case is Complete On Proving Foreseeability
          and Substantial Factor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.  Trial Court Correctly Concluded That Shah's Breach Caused the Damages. . . . . . . . . . . . . 11

     A.   "Foreseeability" Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.   "Substantial Factor" Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. Shah's Breach of his "Warranty" To Assist in the
     Bankruptcy Court Approval. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.  Additional Flaws in Shah's Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     A.   The Bankruptcy Court May Have Approved The Sale
          Without Shah's Breach.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     B.   The Fallacious Claim Based on a "Hail Mary" Remark. . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                          **PAGE(S)**

3

*Ariz. Precious Metals Inc. v. Accept Erste*
    407 Fed. Appx. 216 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4

*Brookhouser v. State*
    10 Cal. App. 4th 1665 (Cal. Ct. App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

6

*Britz Fertilizers, Inc. v. Bayer Corp.*
    , 665 F. Supp. 2d 1142 (E.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7

*Bruckman v. Parliament Escrow Corp.*
    190 Cal. App. 3d 1051 (2d Dist. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 13, 14

8

9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
    429 U.S. 477 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10

*Caminetti v. Manierre*
    23 Cal. 2d  94 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11

*Citri-Lite Co. v. Cott Bevs., Inc.*
    721 F.Supp.2d 912  (E.D.Cal. 2010) ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

12

13

*Dale Construction Co. v. United States*
    168 Ct. Cl. 692 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14

*Fraijo v. Hartland Hospital*
    99 Cal.App.3d 331 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15

16

*Gulf Oil Corp. v. Federal Power Com.*
    563 F.2d 588 (3d Cir. 1977) *cert. denied*, 434 U.S. 1062 (1978). . . . . . . . . . . . . . . . . . . . . 15

17

*Hadley v. Baxendale*
    156 Eng. Rep. 145 (1854). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 9, 11

18

19

*Hart v. Browne*
    103 Cal.App.3d 947 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

*Henry v. Southern P.R. Co.*
    50 Cal. 176 (1875). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21

22

*Hunt Bros. Co. v. San Lorenzo Water Co.*
    150 Cal. 51 (1906). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9, 11

23

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*
    34 Cal. 4th 960 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24

25

*Metropolitan Coal Co. v. Howard*
    155 F.2d 780 (2d Cir. 1946)(J. Learned Hand). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26

*Metzenbaum v. R.O.S. Assocs.*
    188 Cal. App. 3d 202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27

28

---

**PAGE(S)**

*Mitchell v. Gonzales*
      54 Cal. 1041 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Music Grp. Macao Commer. Offshore, Ltd. v. Foote*
      2015 U.S. Dist. LEXIS 81415  (N.D. Calif. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Paccon, Inc. v. United States*
      399 F.2d 162 (Ct. Cl. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Price Waterhouse v. Hopkins*
      490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). . . . . . . . . . . . . . . . . . . . 9

*Shawmut Bank, N.A. v. Kress Assocs.*
      33 F.3d 1477 (9ᵗʰ Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 14

*Transact, Inc. v. D'Errico (In re Transact, Inc)*
      2014 U.S. Dist LEXIS. 109746 (CD Calif 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*US Ecology, Inc. v. State of California*
      129 Cal.App.4th 887 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Alexander*
      106 F.3d 874 (9ᵗʰ Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Rivera-Martinez*
      931 F.2d 148 (1ˢᵗ Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Univ. Of Tex. Southwestern Med. Ctr. V. Nassar*
      570 U.S. ___, 133 S. Ct. 2517, 186 L. Ed. 2ⁿᵈ 503 (2013). . . . . . . . . . . . . . . . . . . . 9

*Vecchione v. Carlin*
      111 Cal.App.3d 351 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*
      249 F.3d 958 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**STATUTES AND CODES**

California Civil Code § 3300. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

California Civil Code § 3301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

42 U.S.C. § 363(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 363(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 363(f)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 2000e-2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 2000e-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1

**PAGE(S)**

**RULES**

Rule 8013, Fed. R. Bankr. P... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

**TREATISES**

11 *Corbin on Contracts*, § 55 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 *Corbin on Contracts*, § 56.2 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 *Corbin on Contracts* § 55.9 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Prosser & Keeton on Torts* § 41 (5th ed. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RESTATEMENTS**

*Restatement (Second) of Contracts* § 351 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

**OTHER AUTHORITIES**

Book of Approved Jury Instructions ("BAJI") 3.75, 3.76
          Cause Substantial Factor Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Judicial Council Civil Jury Instructions ("CACI")  303
          Breach of Contract—Essential Factual Elements. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stanford Encyclopedia of Philosophy (2016).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*System of Logic* (1843) Mill, John Stuart. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF-APPELLEE'S REPLY BRIEF

*POONJA  V. SEVAK & SONS  ET AL.*
Case No. 17-cv-00858  EJD

### INTRODUCTION AND SUMMARY

Chandrakant Shah ("Shah," "Appellant" or "Defendant") still fails to address, let alone rebut, the basic legal and factual issues that clearly establish liability and causation of damages for his – now fully adjudicated -- intentional breach of duties under a contract ("PSA") and guaranty ("Guaranty") for the $46.2 million purchase of the Holiday Inn San Jose ("HISJ" or "Hotel").

Shah is faced with a daunting task. He has been found three times (twice by the Bankruptcy Court and once by this Court) to have intentionally breached the PSA and Guaranty. His myriad of defenses to liability have been rejected by the Trial Court and this Court. It is uncontested that his breach – a refusal to cooperate in Bankruptcy Approval of the sale -- was "critical" and without it the Hotel had to withdraw its motion for approval of the sale, let GECC have relief from stay and allow the foreclosure. The Hotel was lost. Shah has offered no evidence or legal theory to contest that the monetary loss was $11,648,758. Shah is left grasping at straws. 1) He now claims that this Court, in a general statement of the law, established "the law of the case" on causation, precluding the Trial Court from applying the long-established contract causation standards under California law of "foreseeability" and "substantial factor." 2) By misstating the scope of his breach he postulates that Judge Efremsky *might* not have approved the Hotel sale, and, based on such speculation that he should be exonerated. These claims do not bear close examination.

*First*, Shah does not attempt directly to contest his liability for breach of contract. He cannot, because, as this Court has found: "[t]he bankruptcy court correctly found him liable for breach of contract." (Remand Order, 9:18)

*Second,* although this Court also found that the "causal connection between the breach and the failure to obtain [Bankruptcy Court] approval of the sale raised no legal questions, and as such it can only have been a factual determination" (Remand Order, 10:7-9), Shah claims the Bankruptcy Court committed a legal error by applying "two new legal theories" to establish causation for breach of contract. These two legal tests, the "foreseeability" and "substantial factor" tests are not "new," but have "long been applied by California courts." Moreover, they are viewed "as having been incorporated into California Civil Code [§] 3300's definition of the damages available for breach of contract" – the

---

1   very code section Shah claims should have been applied because it was mentioned in this Court's

2   Remand Order.

3       *Third*, Shah claims that the Trial Court "failed to make the specific factual findings set forth in

4   this Court's Remand Order" although it made factual findings specifically supporting causation under

5   both the "foreseeability" standard and the "substantial factor' test from which it concluded that

6   "Defendant [Shah] caused Plaintiff's damages" (Order on Remand, 7:2).  It further found that:

7   "Defendant's [Shah's] failure to fulfill his contractual obligation to 'actively and fully assist [Plaintiff]

8   in obtaining Bankruptcy Court Approval' was undoubtedly a substantial factor in causing the failure to

9   obtain approval of the sale motion and the subsequent foreclosure of the Hotel by GECC." (Order on

10  Remand, 7:27 through 8:2)

11      *Fourth*, Shah inaccurately tries to limit the complete breach of his written promises under the

12  PSA and Guaranty, which were to "actively and fully assist," merely to failure to provide "updated

13  appraisals."  As this Court found, Shah promised to "actively and fully assist [Debtor] in obtaining

14  Bankruptcy Court approval, as requested by [Debtor], including without limitation by providing

15  complete financial, experiential and strategic testimony that will support adequacy of protection of

16  GECC." (Remand Order, 8-9)  As this Court also found, appraisals only "constituted part of this

17  complete financial information" and Shah was "obligated . . . to assist in obtaining approval" and "did

18  not do so." (Remand Order, 8:5-10)  While there may be some uncertainty what the appraisals would

19  have shown, or even what *might* have occurred had Shah not breached, there is no uncertainty that

20  Shah's total breach and refusal to participate in the required Bankruptcy Court hearing led directly to

21  the withdrawal of the motion to approve the sale, which led directly to the foreclosure on the Hotel by

22  GECC.  From this incorrect premise, Shah further incorrectly speculates that had the appraisals been

23  done, their valuation would have precluded Bankruptcy Court Approval.  This is contrary to the

24  Bankruptcy Code and a fair reading of the pleadings and hearings in front of Judge Efremsky.  Judge

25  Johnson, with expertise in the Bankruptcy Code and with the original briefings to Judge Efremsky and

26  hearing transcripts before him found Shah's "speculative assertion" of this not to be the case.  Moreover

27  because Judge Johnson found the breach by Shah "ensured the sale would not be approved and that

28  GECC would foreclose on the Hotel" and that this was "a substantial factor in causing the failure to

---

PLAINTIFF-APPELLEE'S REPLY BRIEF

*POONJA  V. SEVAK & SONS  ET AL.*
Case No. 17-cv-00858  EJD

obtain approval of the sale motion" he found speculation on how Judge Efremsky would have ruled unnecessary. (Order Following Remand, 7:22-8:2) Were it necessary to find hypothetical facts as to what *might* have happened in the Bankruptcy Court, had Shah's breach not caused the sale motion to be withdrawn (it is not), Judge Johnson would be charged with finding those facts.  This Court recognized this in its Remand Order, holding that "that is for the bankruptcy court to decide."  (Remand Order, 10:23)

The time has come for Shah to bear responsibility for a situation entirely of his own making, one in which he sought to make a killing upwards of $50 million, with a small cash investment, but which did not work out due to the real estate market.

## ISSUES ARGUED IN SHAH'S REPLY BRIEF

Shah narrows his argument to only three issues in his "Reply Brief."  These issues are as follows:

> 1.   The "Bankruptcy Court Ignored This Court's Order Setting Forth the Relevant Standard" for causation in a breach of contract case and instead applied legally incorrect standards of "foreseeability" and "substantial factor" (Reply Brief, 5:17 through 10:4);
>
> 2.   "The Bankruptcy Court Erred in Concluding [Factually] That Mr. Shah's Breach Caused $12 Million in Damages" (Reply Brief, 10:5 through 13:25) and,
>
> 3.   "The Trustee's 'Warranty' Theory Does Not Relieve Him of His Burden to Prove Causation" (Reply Brief 13:26 through 15:1).

In doing so, Shah does not address the extensive legal authority in the Trustee's Opening Brief on California "causation" law for contractual breach – effectively admitting its validity.  Shah also ignores the Trial Court's factual findings on remand that establish "the requisite causation, or causal connection," under the appropriate California standards, claiming that the Trial Court "made no factual finding" to support "proximate causation."  Instead, Shah engages in the "speculative assertion that the Court would have denied approval of the sale and asks the Court to substitute [Shah's] judgment for its own."  (Remand Order, 7:23-7:24) The Trial Court properly refused to speculate, as this Court should also.

1

**ARGUMENT**

2   **I.   Legal Tests in California for "Causation" of Damages Resulting from Contract Breach**

3        **A.   The Trial Court Did Not "Ignore" This Court's Remand Order**

4        Shah claims that the only legal standard for causation of damages in a contract case here is a

5   "reasonable certainty" test taken from *Vestar Development* and *Caminetti,* which this Court alluded to

6   in its Remand Order under the general rubric of "Principles of Contract Law."  (Remand Order, 6:8-

7   6:25) This Court, of course, did not make any legal or factual findings on causation, but merely

8   "remand[ed] to the bankruptcy court to make the necessary factual determinations in the first instance."

9   There was no "law of the case" established on this issue.  So, Shah's claim and decisional authorities

10   that a "court's departure from the law of the case requires reversal" have absolutely no application here.

11   (Reply Brief, 5:19 through 6:6)

12        Neither of the two cases relied upon by Shah support his argument.  In *United States v.*

13   *Alexander*, 106 F.3d 874 (9th Cir. 1997) the district court granted defendant's suppression motion and

14   the Ninth Circuit found the granting of third motion for reconsideration of the suppression order would

15   be an abuse of discretion under the "law of the case" doctrine.  Unlike *Alexander*, this Court did not

16   adjudicate the issue of "causation" in its Remand Order, but left it up to the Trial Court to decide. There

17   was no "law of the case" on causation established.  In *United States v. Rivera-Martinez*, 931 F.2d 148

18   (1st Cir. 1991) the "law of the case" doctrine was applied where the district court had refused to allow

19   a defendant to withdraw his guilty plea, the court of appeals had already affirmed once and then refused

20   to consider it again because it was the law of the case.  Unlike here, in *Rivera-Martinez*, the withdrawal

21   of the guilty plea had been fully adjudicated by the lower court, affirmed by the appellate court and

22   became the "law of the case" and could not be re-litigated on remand to the trial court.

23        **B.   Standard for Causation in a Breach of Contract Case Is Contained in California**
24                **Civil Code § 3300 et seq. --This Court's Standard, Used on Remand**

25        Even assuming, *arguendo,* that "law of the case" applied here (which it does not) the causation

26   standards applied by the Trial Court in its Order on Remand are the same as that in *Vestar Development*

27   and *Caminetti* referred to by this Court .  This Court, in its Remand Order, cited to the Civil Code

28

---

provisions dealing generally with causation of damages for a breach of contract at §§ 3300 and 3301. It stated as one of the "Principles of Contract Law" in the Remand Order that:

> The measure of damages for a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Id. § 3301. "It has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged.'" Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 961 (9th Cir. 2001) (quoting Caminetti v. Manierre, 23 Cal. 2d 94, 101 (1943)).

(Remand Order, 6:18-25)

The Trial Court's subsequent statement of the law in its Order Following Remand, explicitly refers to § 3300 and explains that the *Hadley* rule it applied has been "incorporated into California Civil Code [§] 3300:

> The *Hadley* rule **"has long been applied by California courts, which view it as having been incorporated into California Civil Code [§] 3300's definition of the damages available for breach of a contract."** *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969–70 (2004) (quoting *Hunt Bros. Co. v. San Lorenzo Water Co.*, 150 Cal. 51, 56 (1906)). *See* Restatement (Second) of Contracts § 351 (1981); 11 Corbin on Contracts § 56.2 (2016). The applicable test is that:

> > the damages that can be recovered for a breach are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of a breach. Other damages are too remote. . . . This rule does not mean that the parties should actually have contemplated the very consequence that occurred, but simply that the consequence for which compensation is sought, must be such as the parties may be reasonably supposed, in the light of all the facts known, or which should have been known to them, to have considered as likely to follow, in the ordinary course of things, from a breach, and, therefore, to have in effect stipulated against. The understanding and intention of the parties in this regard must of course be ascertained from the language of the contract, in the light of such facts.

> *Hunt Bros. Co.*, 150 Cal. at 56–57. In other words, a plaintiff may only recover damages for an injury that was, or should have been, foreseeable at the time the contract was made.

(Order on Remand, 5:6-5:20) (Emphasis supplied.)

**C.     The "Foreseeability" Standard – The Law in California Contract Breach Cases**

The Trial Court, in fact, *did* apply the law this Court referred to in its Remand Order, by applying the "foreseeability" standard.  Shah, in his Reply Brief, does not address this, effectively admitting it. Shah's simple assertion that the "Trustee invokes nineteenth century English common law, opines on Corbin on Contracts, John Stuart Mill, and the Restatement of Contracts, and cites an abundance of caselaw [*sic*]," and nothing more, is extremely weak, particularly if one examines these authorities that establish the "foreseeability" standard.

--     The *Hadley* rule "has long been applied by California courts" *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 969–70 (2004) (quoting *Hunt Bros. Co. v. San Lorenzo Water Co.*, 150 Cal. 51, 56 (1906)).

--     *Hadley* "has won universal acceptance in the common law and remains the leading case in the field" and holds that "damages are recoverable only for those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." 11 *Corbin on Contracts*, (2005) § 56.2, pp. 83, 85-86.

--     "The *Restatement (Second) of Contracts* also adopts the *Hadley v. Baxendale* test in § 351." *Id.,* at p. 87.

--     Section 351 of the *Restatement* has been applied by a California District Court in reviewing a bankruptcy adversary proceeding. *Transact, Inc. v. D'Errico (In re Transact, Inc)*, 2014 U.S. Dist LEXIS. 109746, *58-61 (CD Calif 2014)("The test for liability. . . is whether it was foreseeable at the time of the contract")

--     Section 351 has been applied by the 9th Circuit in *Ariz. Precious Metals Inc. v. Accept Erste*, 407 Fed. Appx. 216, 217 (9th Cir. 2011) ("general principles of contract . . .dictate that '[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.' *Restatement (Second) of Contracts* § 351 (1981)").

--     Corbin observes that the "cases are very numerous" dealing with loss that is the "proximate result" of a breach of contract, "but if the court attempts a definition it will practically always be found that it is expressed in terms of the possibility of foresight." 11 *Corbin on Contracts* § 55 (2005) pp. 22-23

--     Corbin cites the California Supreme Court case *Henry v. Southern P.R. Co*. 50 Cal. 176 (1875),  decided at the same time Civil Code §§ 3300 and 3301 were enacted, and which held: "A long series of judicial decisions has defined proximate or immediate and direct damages to be the ordinary and natural results. . .; such as are usual and as, therefore, might have been expected." *Id.* at 183.

Shah cites nothing in opposition to this overwhelming authority.

**D.    The "Substantial Factor" Test is Widely Recognized in California and Applied Where Multiple Factors *Might* Cause Injury**

The Trial Court might have stopped after applying the *Hadley* foreseeability standard, but it did not, also applying the "substantial factor" test, finding Shah liable under that standard as well. "Substantial factor" is widely accepted in California as a test for legal or "but" causation and many California and federal courts, as well as California's jury instructions have applied it.[1]

---

[1]  *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1495 (9th Cir. 1994)(Judge Fletcher, in a breach of contract case, after discussing the "confusing way under California law" terminology like "proximate cause" and "cause in fact" have been used, held: "The California courts have recognized that there are two ways in which a plaintiff can show cause in fact: by showing that defendant's conduct was the 'but for' cause of injury, or by showing that it was a 'substantial factor' in that injury."

*Brookhouser v. State*, 10 Cal. App. 4th 1665 (Cal. Ct. App. 1992) ("There are two widely recognized tests for determining whether a defendant's conduct has in fact caused the plaintiff's injury: Whether the injury would not have occurred but for the defendant's conduct, and whether the defendant's conduct was a substantial factor in bringing about the injury. . . . *Mitchell* [*v. Gonzales*]. . . does not appear to alter these two tests for cause in fact.")

*US Ecology, Inc. v. State of California ,*129 Cal.App.4th 887, 902 (2005) (The test for causation in a breach of contract (or promissory estoppel) action is whether the breach was a substantial factor in causing the damages citing *Bruckman v. Parliament Escrow Corp*. (1987) 190 Cal. App. 3d 1051, 1063 "[in contract actions '[i]n order to establish liability the plaintiff must show that defendant's breach was a 'substantial factor' in causing the injury.'")

 *Music Grp. Macao Commer. Offshore, Ltd. v. Foote*, 2015 U.S. Dist. LEXIS 81415, *38-39 (N.D. Calif. 2015) ("'In breach of contract actions, damages cannot be presumed to flow from liability. It is essential to establish a causal connection between the breach and the damages sought.'" *Metzenbaum v. R.O.S. Assocs.*, 188 Cal. App. 3d 202, 211, 232 Cal. Rptr. 741 (1986). 'The requisite causation, or causal connection, between breach and damages is established when the plaintiff demonstrates that the defendant's breach was a 'substantial factor' in causing the damage.'" *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1167-68 (E.D. Cal. 2009) (citations omitted)"),

 *Citri-Lite Co. v. Cott Bevs., Inc.*721 F.Supp.2d 912, 928  (E.D.Cal. 2010)  ("The requisite causation, or causal connection, is established when the plaintiff demonstrates that the defendant's breach was a 'substantial factor' in  causing damage.")

BAJI 3.76. Cause--Substantial Factor Test ("The law defines cause in its own particular way. A cause of [injury] [damage] [loss] [or] [harm] is something that is a substantial factor in bringing about an [injury] [damage] [loss] [or] [harm].") CACI 303 Breach of Contract—Essential Factual Elements ("To recover damages from [] for breach of contract, [] must prove all of the following: . . . 5.That [] was harmed; and 6.That []'s breach of contract was a substantial factor in causing []'s harm.")

---

1    Shah does not address these authorities, effectively conceding them.

2         Under this standard, as applied by the Trial Court here: "[e]ven if the plaintiff's total injury is

3    the result of multiple factors in addition to the defendant's breach, the defendant must generally pay

4    damages equivalent to the total harm suffered [by the plaintiff] if his breach was a 'substantial factor'

5    in causing the injury." Order on Remand, 7:7-7:13; *Bruckman v. Parliament Escrow Corp.*, 190 Cal.

6    App. 3d 1051 (1987) (holding that even though an escrow agent's breach of contract may not have been

7    the sole cause of plaintiff's injury, the 'substantial factor' test justified the trial court's award).

8    *Bruckman* explained the substantial factor test, used by the Trial Court, and its relationship to *Hadley*

9    and the "foreseeability" test as follows:

10        In all cases involving problems of causation and responsibility for harm, . . . the
          plaintiff's total injury may have been the result of many factors in addition to the
11        defendant's tort or breach of contract. Must the defendant pay damages
          equivalent to the total harm suffered? Generally the answer is Yes, even though
12        there were contributing factors other than his own conduct. Must the plaintiff
          show the proportionate part played by the defendant's breach of contract among
13        all the contributing factors causing the injury, and must his loss be segregated
          proportionately? To these questions the answer is generally No. . . . In order to
14        establish liability the plaintiff must show that the defendant's breach was a
          "substantial factor" in causing the injury. . . . Because of the limiting doctrine of
15        *Hadley v. Baxendale*, apportionment has not been a concern in contract cases.
16

17   190 Cal. App. 3d at 1063 (emphasis and internal quotation marks removed).  Order on Remand, 7:15-

18   7:21.

19        Corbin recognizes that "according to John Stuart Mill, the best definition of the 'cause' of an

20   event is 'the sum- total of its antecedents.'" 11 *Corbin on Contracts*,§ 55.9 (2005), p. 31.  But,

21   recognizing that many antecedents can be identified as possibly contributing to a plaintiff's total

22   damages, the law makes a defendant liable for such injury without inquiry into *all* possible antecedents

23   and without the need to speculate about hypotheticals, as Shah would have the Court do here.  The

24   "substantial factor" test avoids having to determine what the Trial Court, on remand, found to be the

25   "unknown"  -- "Defendant's [Shah's] speculative assertion that the Court would have denied approval

26   of the sale.

27

28

**E.      "Legal Causation" and Actual --"But For" -- Causation**

Applying "legal" causation and actual ("but for") causation standards, like the "foreseeability" and "substantial factor" tests is not unusual in the law.[2]  It accounts both for the policy limitations that substantive law may place on holding a defendant liable for damages, and for the concatenation requirement that damages resulted from an antecedent event, *viz.,* the alleged wrongdoing.  Doing this, the Trial Court gave Shah the benefit of both of the tests, and he failed both of them.

As to the "legal" causation for contracts,  Corbin, the *Restatement* and cases like *Hunt Bros. Co. v. San Lorenzo Water Co.,* explain "the rule enunciated in the leading case of *Hadley v. Baxendale . . . which has been universally accepted and followed,"* limits the legal liability for damages as a matter of policy to "only such as may reasonably be supposed to have been within the contemplation of the parties at the time of making of the contract" – those foreseeable by the parties when entering into the contract.  (*Id,* 150 Cal. at 56-57 ) As to "but for" or actual causation, contract law, like tort law, requires a concatenation connection of the wrong with the injury.  "The California courts have recognized that there are two ways in which a plaintiff can show cause in fact: by showing that defendant's conduct was the 'but for' cause of injury, or by showing that it was a 'substantial factor' in that injury."  *Shawmut Bank, N.A. v. Kress Assocs.***,** 33 F.3d 1477, 1495 (9th Cir. 1994) In a tort context the California Supreme Court dealt with the situation here (in which Shah now claims both his own  breach in failing to support the motion to approve the sale, and, Judge Efremsky denying the motion to approve could have caused foreclosure on the Hotel). It held in *Mitchell v. Gonzales,* 54 Cal. 1041, 1049 (1991) that looking solely at the "but for" cause when two causes could be responsible for the damage and either one of them alone could have been sufficient to cause the damage is not proper:

---

[2] In antitrust law, even though "but for" causation may be present, for policy reasons, the damages must also "flow[] from that which makes the defendant's acts unlawful." *Brunswick Corp. V. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977).  In employment discrimination law *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. ____, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) held that in a Title VII retaliation claim under 42 U.S.C. § 2000e-3 plaintiff is required to show that a retaliatory motive was the "but for" cause of the adverse employment action, but in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) in Title VII action under 42 U.S.C. §2000e-2(a), retaliation in a status based  discrimination case must only be a "motivating" factor  in, but need not be the "but for" cause of, an adverse employment action.

---

In those few situations, where there are concurrent [independent] causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it. The proper rule for such situations is that the defendant's conduct is a cause of the event because it is a material element and a substantial factor in bringing it about. (*Vecchione v. Carlin* (1980) 111 Cal.App.3d 351, 359 [168 Cal.Rptr. 571]; see also *Hart v. Browne* (1980) 103 Cal.App.3d 947, 960-962 [163 Cal.Rptr. 356]; *Fraijo v. Hartland Hospital* (1979) 99 Cal.App.3d 331, 346-347 [160 Cal.Rptr. 246]; *Prosser & Keeton on Torts* (5th ed. 1984) § 41, pp. 266-267; BAJI Nos. 3.75, 3.76 and respective comments.)

This is Shah's argument, that even if he had not breached thereby causing withdrawal of the motion for Bankruptcy Court Approval and causing foreclosure, a foreclosure *might* have occurred any way because Judge Efremsky *might* have denied approval even with Shah's support.  The argument is fallacious because Shah's breach was found to be a "substantial element" in the foreclosure, and was one which chronologically preceded Judge Efremsky deciding the motion for approval one way or the other, and precluded the motion from even being presented to Judge Efremsky.

### F.    Factual Findings on Causation by Trial Court on Remand

The Trial Court made findings of fact on remand that both the "foreseeability" and "substantial factor**"** tests were met. (Order on Remand, 5:21-7-2 and 7:3-8:2) Shah does not challenge these findings of fact as satisfying these standards.  Even if he had, they could not be overturned as "clearly erroneous" under the standard of review here, dictated by Fed.R. Bankr. P. § 8013. (Remand Order, 5:10-5:25)

### G.    Plaintiff's Case is Complete On Proving Foreseeability and Substantial Factor

Once the damages are found to have been a "foreseeable" consequence of breach, a plaintiff suing for breach of contract has presented a *prima facie* case on legal causation.  *Shawmut Bank N.A. v. Kress Assocs.* 33 F.3d 1477, 1497 (9th Cir. 1994 (The Ninth Circuit held that where, as here, defendant's breach of contract and actual resulting damages provide a *prima facie* showing of cause in fact, the difficulty and speculativeness of determining a proffered defense like whether the injury *might* also have occurred without the breach "becomes the defendant's problem.")

Once a contractual breach is found to be a substantial factor in causing damages to a plaintiff, this is a legally sufficient showing of causation – even though plaintiff's total injury may have been the result of many factors in addition to the defendant's breach of contract. *Bruckman*, 190 Cal. App. 3d at 1063-1064.  Neither other antecedent factors, nor, as here, hypothetical postcedent factors (what might have occurred in the Banktuptcy Court without the breach) are relevant thereafter.

**II.     Trial Court Correctly Concluded That Shah's Breach Caused the Damages**

Shah proffers two arguments, both wrong, why Plaintiff cannot satisfy the "foreseeability" or the "substantial factor" legal tests for causation.

**A.     "Foreseeability" Standard**

Shah claims that the foreseeability standard is to be applied *"at the time Mr. Shah refused to provide updated appraisals"* and that Plaintiff must prove "it was reasonably foreseeable that Judge Efremsky would approve the sale so long as he had those appraisals." (Appellant's Reply, 11:14-11:17) This is wrong on many levels.

*First*, as the Trial Court (and all of the authorities cited) recognize the damages for which the breaching party is held liable are those foreseen: "as a probable result of the breach *when the contract was made*," "only those as may reasonably be supposed to have been within the contemplation of the parties *at the time of the making of the contract*, as the probable result of a breach," and "damages, . . foreseeable at the time the contract was made." (Order on Remand, 5:4-5:5, 5:12-5:13, 5:19-5:20, citing *Hadley v. Baxendale* and *Hunt Bros. Co.*) (Emphasis supplied.)  Shah misses the whole concept of modern contract law, which is that the parties in *entering into* an agreement and exchanging promises exercise the power to limit the scope of their liability for damages that may be caused by a breach. (See, *Restatement (Second) of Contracts* § 351 (1981)(damages the parties had "reason to foresee as a probable result of the breach when the contract was made")

*Second,* Shah's argument (based on his mistaken time for measuring probable results of breach) that the history of the parties negotiation of the contract and the terms are "irrelevant" is entirely wrongheaded. (Appellant's Reply, 11:12-11:14) As the Trial Court quoted from the California Supreme Court, the scope of the foreseeable damages is:

> . . such as the parties may be reasonably supposed, in the light of all the facts known, or which should have been known to them, to have considered as likely to follow in the ordinary course of things from a breach and, and therefore, to have in effect stipulated against.  The understanding and intention of the parties in this regard must of course be ascertained from the language of the contract, in light of such facts.

(Order on Remand, 5:14-5:18, citing *Hunt Bros. Co.*)

The Trial Court correctly reviewed the facts on the record under this standard and concluded:

---

1
2
3
4

The Court finds that, at the time the contract was made, the parties reasonably contemplated that GECC's foreclosure of Plaintiff's Hotel would be the natural and foreseeable result of Defendant's refusal to "actively and fully assist [Plaintiff] in obtaining Bankruptcy Court Approval." PSA at § 6.2.4.  By abandoning his contractual obligations, Defendant caused the sale motion to be withdrawn before it could be heard by the Court, ultimately resulting in Plaintiff's injury. Accordingly, Defendant caused Plaintiff's damages.

5

This factual finding is not "clearly erroneous" and should not be reversed under Fed. R.Bankr.P. § 8013.

6

**B.    "Substantial Factor" Test**

7

8

9

10

11

Shah claims that the "substantial factor" test and factual findings by the Trial Court on this are not "of any help to the Trustee" and that this test "has no place in the analysis."  (Appellant's Reply, 11:22, 12:3-4)  This is, according to Shah, because Plaintiff has not and cannot "carry the burden to prove that Mr. Shah's breach was a significant factor in the collapse of the sale." (*Id.*, 12:8-12:9) This is a dubious position in the face of the undisputed findings of the Trial Court that:

12

13

14

15

. . .by refusing to honor his contractual obligations, [Shah] ensured that the sale would not be approved and that GECC would foreclose on the Hotel . . . [and] [Shah's] failure to fulfill his contractual obligation to 'actively and fully assist [Plaintiff] in obtaining Bankruptcy Court Approval" was undoubtedly a substantial factor in causing the failure to obtain approval of he sale motion and the subsequent foreclosure of the Hotel by GECC."

16

(Order on Remand, 7:25-8:2)

17

To justify this position, Shah must ignore or contort both reality and logic.

18

19

20

21

22

23

24

25

26

27

The reality which Shah must ignore is: 1) that Shah was required to "actively and fully assist" in presenting the motion for approval of the sale to the Bankruptcy Court (not just appraisals as Shah argues); 2) that Shah completely refused to do so; and 3) that without Shah's required cooperation, the Hotel's attorney, Meyers, was forced to withdraw the motion "ensur[ing] the sale would not be approved and that GECC would foreclose on the Hotel."  Once this reality is ignored, Shah argues that we must speculate that Judge Efremsky, even with Shah's full cooperation, would never have approved the sale or allowed a reorganization under the chapter 11 proceedings, and the GECC foreclosure would have occurred anyway.  This claim is being made  despite there being considerable factual dispute about the various methods which still remained possible to approve the sale when Shah breached (see section "IV.A." below).

28

The logic which Shah must contort is that underlying "but for" causation, as logically analyzed by John Stuart Mill[3] and Corbin.  It recognizes that many antecedents can be identified as possibly contributing to a phenomenon – a plaintiff's total damages resulting from a breach of contract.  A single antecedent does not have to be isolated. The law makes a defendant liable for causing such injury if a breach actually resulted in the injury, without inquiry into all possible antecedents.  11 *Corbin on Contracts*,§ 55.9 (2005), p. 31.  This is the purpose of the "substantial factor" test.  It avoids having to determine what the Trial Court on remand found to be the "unknown"  -- "Defendant's [Shah's] speculative assertion that the Court would have denied approval of the sale" even where Shah's breach *actually* caused the withdrawal of the approval motion and its effective denial.  Shah's contorted logic: 1) postulates the hypothetical that Shah fully performed his promises; 2) adds to that his own speculation of what Judge Efremsky would have had before him by way of deal points or a chapter 11 plan; 3) speculates about the evidence supporting it; and 4) speculates how Judge Efremsky would have ruled. The Trial Court rejected this exercise because Plaintiff had satisfied completely proof of his *prima facie* case on causation. (Order on Remand, 7:22-7:27) There can be no doubt that "but for" Shah's breach the motion would have proceeded and its withdrawal would not have occurred.  Shah's breach was both a logical antecedent that "caused" the withdrawal of the sale motion and foreclosure, and, a substantial one. The Trial Court's findings that Shah's breach was "undoubtedly a substantial factor in causing the failure to obtain approval of the sale motion and the subsequent foreclosure of the Hotel by GECC" are not "clearly erroneous" and should not be reversed under Fed. R.Bankr.P. § 8013.

Shah's contention that the *Bruckman v. Parliament Escrow Corp.,* 190 Cal. App. 3d 1051, 1063 (1987) cited by the Trial Court and relied upon by Plaintiff "has no bearing on the issue before this Court" is also without merit. (Appellant's Reply, 7:7-7:19) In *Bruckman*, the court, recognizing that while the alleged breach may have been only one among other factors that could have caused the damages, it was "a substantial factor" in causing the damages and therefore "was a legally sufficient

---

[3] John Stuart Mill was, according to the *Stanford Encyclopedia of Philosophy* (2016), "the most influential English language philosopher of the nineteenth century."  In his *System of Logic* (1843) Mill formulated principles of inductive reasoning which apply to the cause and effect of given phenomenon. Inductive reasoning is the logical process in which multiple premises, assumed to be true, are combined to obtain a specific conclusion.

---

PLAINTIFF-APPELLEE'S REPLY BRIEF

*POONJA  V. SEVAK & SONS  ET AL.*
Case No. 17-cv-00858  EJD

showing of causation" by the plaintiff.  This is precisely the tack taken by the Trial Court here.  Shah's argument, like the defendant in *Bruckman*, that the sale of the Hotel "probably would not have [been approved] anyway" due to speculative antecedents (Judge Efremsky's hypothetical ruling here and non-performance by another party to the escrow in *Bruckman*), and that the same damages would have resulted anyway, is to no avail and irrelevant.  *Bruckman*, at 1063-1064  Not surprisingly, *Bruckman*, like the Trial Court, also relied on Corbin and the logic of BAJI No. 3.76.

Likewise, Shah's argument that *Shawmut Bank N.A. v. Kress Assocs.*, 33 F. 3d 1477 (9th Cir. 1994) is not applicable here has no merit.  In *Shawmut*, facing the fact that a developer, Deringer, had misappropriated bondholder plaintiffs' funds released by FICAL to Deringer, which funds were then lost ("successful demonstration of cause in fact as a matter of simple logic"), FICAL tried to defend on the speculation that the losses would have occurred anyway, in the absence of FICAL's own breach in releasing funds to Derringer.  Its defense was rejected.  The 9th Circuit, reversing summary judgment for FICAL, found "In order to show any different causal relationship between breach and damages, it is FICAL which must begin to speculate, and which must imagine what might have happened in the absence of breach. . .  FICAL . . . has provided no evidence on the question of causation – just its own assumptions about what Deringer would have done if FICAL had not breached."  *Id.*, at 1497

## III.      Shah's Breach of his "Warranty" To Assist in the Bankruptcy Court Approval

Shah attempts to dismiss his breach of express warranties in the PSA and Guaranty by claiming this is merely a case of "a commonly-used 'Representations and Warranties' clause."  (Appellant's Reply, 14:2-14:4)  This is not the case.  A simple reading of the PSA and Guaranty shows that, in addition to agreeing/promising on many issues Shah gave an unqualified "warranty" (and "IRREVOCABLY AND UNCONDITIONALLY" guarantied "each and every . . warranty") on certain matters over which Shah had complete control and which were critical – life and death – to the sale of the Hotel.  (PSA §§ 6.2.1 - 6.2.4)  One of these was Shah's obligation to "actively and fully assist Seller in obtaining Bankruptcy Court Approval," which Shah admits refusing to do.  Words, like "warranty," where they are chosen for a contract or statute, are important and, as Felix Frankfurter wrote, "everything depends on our understanding of them."

1    "Warranty" is a legal term of art different from a promise or agreement.  It is an "assurance by

2    one party to an agreement [Shah] of the existence of a fact upon which the other party [Hotel] may rely;

3    it is intended precisely to relieve the promisee [Hotel] of any duty to ascertain the facts for himself. Thus,

4    a warranty amounts to a promise [by Shah] to indemnify the promisee [Hotel] for any loss if the fact

5    warranted proves untrue. *Dale Constr. Co. v. United States,* 168 Ct. Cl. 692, 699 (1964); *see also*

6    *Paccon, Inc. v. United States,* 399 F.2d 162, 166-67 (Ct. Cl. 1968) (quoting *Dale Constr. Co. v. United*

7    *States).*" A party by "warranting," assumes for itself, as Shah did here,  "the entire risk that future

8    conditions" will turn out to be otherwise.  *Gulf Oil Corp. v. Federal Power Com.*, 563 F.2d 588, 599 (3d

9    Cir. 1977) *cert. denied*, 434 U.S. 1062 (1978). A warranty amounts to a "promise to indemnify the

10   promisee for any loss if the fact warranted proves untrue." *Metropolitan Coal Co. v. Howard*, 155 F.2d

11   780, 784 (2d Cir. 1946)(J. Learned Hand)

12       Shah expressly agreed to indemnify – hold harmless – the Hotel for any loss should he fail to

13   "actively and fully assist" in obtaining Bankruptcy Court Approval.  It is not disputed that Shah refused

14   and failed completely to assist the Hotel in presenting the PSA to the Bankruptcy Court and that the

15   immediate loss to the Hotel was the GECC foreclosure.  Shah must hold the Hotel harmless for that loss.

16   **IV.     Additional Flaws in Shah's Argument**

17          **A.      The Bankruptcy Court May Have Approved The Sale Without Shah's Breach**

18       Shah argues fallaciously that the "bankruptcy court Judge Efremsky was not prepared to approve

19   the sale [of the Hotel] for a number of different reasons, with or without updated appraisals," suggesting

20   that Plaintiff therefore cannot recover from Shah. (Appellant's Reply, 2:19-2:20)

21       *First*, this Court held that "[i]n any case, under the PSA, the bankruptcy Court's disapproval

22   would eliminate Debtor's [Hotel's] obligations; it had no effect on Appellant's [Shah's] guaranty."

23   (Remand Order 8:2-4)  As this holding correctly observes, the fact that Judge Efremsky, may, for

24   whatever reason, not have approved the sale in the Bankruptcy proceeding, if the sale could not proceed

25   in a Chapter 11 or otherwise because Shah did not perform under the Guaranty, he would be liable for

26   the damages the Hotel sustained.

27       *Second,* this Court found as follows: "Although the bankruptcy court expressed some skepticism

28   of the purposed deal, it did not deny the motion to approve it.  To the contrary, at both the hearing and

---

the status conference, the bankruptcy court sought and obtained assurances that the parties to the sale were working to ensure that GECC's interest would be protected.  Appellant's purported breach was refusing to participate in that process, and it occurred well before the bankruptcy court denied the motion to authorize the sale." (Remand Order 7:19-8:2)  As this Court recognized, Shah's breach was far greater than simply not providing "updated appraisals."[4]  It was a refusal to participate altogether in the Bankruptcy Court process to sell the Hotel, whether: under 42 U.S.C. §363(b), §363(e) or §363(f)(3); in the context of a chapter 11 reorganization plan;  with a revision of the GECC debt; or, with the Seller providing additional strength to the deal.[5]  All of these were under consideration in the preliminary discussions with Judge Efremsky. All were precluded by Shah's *actual* breach, his complete refusal to participate in the proceedings.  Shah's attempt to limit the inquiry here to whether a motion to sell would provide adequate protection to GECC if updated appraisals came in at lower values, is simply a "strawman."

**B.    The Fallacious Claim Based on a "Hail Mary" Remark**

Shah attempts to make something of Judge Efremsky's remark that the PSA was a "Hail Mary," claiming that the Trustee "offers no alternative explanation for that comment." (Appellant's Reply, 2:21, fn. 1) This argument is badly misplaced.  Both the remark and the football analogy actually support the Trustee's position.  *First*, a "Hail Mary" is synonymous with the last or penultimate play in a football game, one on which the game *can be won*.  The approval of the PSA by the Bankruptcy Court, for which

---

[4] In Appellant's Reply, as in his Opening Brief, Shah tries, again and again, to limit his breach, and the inquiry about what the options for presentation to the Bankruptcy Court were to "updated appraisals."  Reply Brief: 1:15, 2:1, 2:7, 2:8, 2:11, 2:12, 2:17, 2:20, 3:9, 3:19, 4:13, 4:16, 4:19, 4:22, 5:4, 5:8, 5:10, 5:11, 7:19, 8:25, 9:5, 10:12, 11:10, 11:16, 11:19, 12:6, 12:11, 12:14, 12:16, 13:12, 13:22, and 13:23.  Opening Brief: 2:8, 2:14, 2:17, 3:12, 10:19, 12:20, 12:22, 12:23, 14:16, 15:13, 16:15, 16:23, 17:4, 17:19, 18:2, 18:24, 18:25, 19:3, 21:18, 21:23, 25:6, 25:9, 27:25, 28:5, 28:7, 28:11, 29:13, 29:25, 30:6, 30:8, 30:9, 30:12, 31:9, 31:24, 32:7 and 32:15.

[5] Each of these were raised before Judge Efremsky, who recognized that there were a number of options and routes to approve the sale, and that none was foreclosed. See, generally, Doc. No. 4-24, Transcript of November 4, 2009 hearing, pp. 5-6, 9-13; Doc. No. 4-25, Transcript of December 2, 2009 hearing, pp. 2-4. See, Doc. No. 4-22, Transcript of December 16, 2009 hearing: (1) as to amending the PSA, 3:10; (2) as to a chapter 11 plan 5:18-25, 16:17-2, 18:12-23; (3) as to 42 U.S.C. §363(b), §363(e) or §363(f)(3) approval 3:11-5:10, 6:1-6:8, 14:21-15:6; (4) as to adjusting the GECC note 5:11-17, 15:7-16:2, 16:23-18:11, 18:24-21:12, 23:2-15, 29:5-30:6; 32:21-33:13, 38:15-40:22; and (4) as to the Seller strengthening the deal 7:3-12.

---

Shah was to "provid[e] complete financial, experiential and strategic information and testimony" to make it successful (but failed totally to do) was "foreseen" by all as the last chance before foreclosure of the Hotel by GECC and damages.   *Second*, it was recognized that approval required complete cooperation by Shah to succeed, and he promised (indeed "warranted") he would provide such cooperation, but totally failed to perform. *Third*, Shah's failure, as everyone knew it would, assured that the Trustee lost.  Shah, in the football analogy, walked off the field before the last play, assuring failure. Yet, he now claims he should win because it would never would have succeeded anyway – excusing his own wrong.  One only has to remember the classic Roger Staubach (1975) or Doug Flutie (1984) "Hail Mary" plays that won games or players who have succeeded in "Hail Marys" regularly, like Aaron Rogers in 2015 (v. Detroit Lions), 2016 (two plays v. Arizona Cardinals) and 2017 (v. New York Giants), to understand that a game cannot be terminated before time runs out.  Meyers, with his expertise in structuring chapter 11 sales of real estate using the tools of the Bankruptcy Code, believed he could do it, *if* he had Shah's cooperation. He was not given the chance. Shah must now bear the responsibility for his own actions.

## CONCLUSION

For the foregoing reasons, the judgment of the Trial Court should now finally be affirmed.

Dated: August 30, 2017

Respectfully submitted,                    HENNEFER, FINLEY & WOOD, LLP

By:___/s/ James A. Hennefer_____

James A. Hennefer

Special Counsel for Mohamed Poonja, Chapter 7 Trustee for San Jose Airport Hotel, LLC, dba Holiday Inn San Jose, and Mobedshahi Hotel Group

---

1

**CERTIFICATION OF COMPLIANCE**

2
I hereby certify that the attached Plaintiff-Appellee's Reply contains 6956 words of text and

3
is in compliance with Fed. R.Bankr. P. 8015(a)(7)(B)(i) and Fed.R. Bankr. P. 8015 (a)(7)(C)(i).

4

5
Dated August 30, 2017                              _____/s/ James A. Hennefer_____

6
                                                              James A. Hennefer

7
                                                    Special Counsel for Mohamed Poonja,
                                                    Chapter 7 Trustee for San Jose Airport
8
                                                    Hotel, LLC, dba Holiday Inn San Jose, and
9
                                                    Mobedshahi Hotel Group

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF-APPELLEE'S REPLY BRIEF                           *POONJA  V. SEVAK & SONS  ET AL.*
                                                           Case No. 17-cv-00858   EJD

1

## PROOF OF SERVICE

2

I am employed in the City and County of San Francisco, California.  I am over the age of 18
and am not a party to the within action.  My business address is Embarcadero West, 275 Battery

3

Street, Second Floor, San Francisco, California, 94111.

4

On August 30, 2017, I served the below-listed document(s) described as:

5

PLAINTIFF-APPELLEE'S REPLY BRIEF

6

7

X        (BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM) On this date I
          electronically uploaded a true and correct copy of the document(s) in Adobe ".pdf"

8

          format the to the Court's CM/ECF system which serves them on registered CM/ECF
          users and provides a Notice of Electronic Filing to such users.

9

10

          (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed
          in the United States mail at San Francisco, California, addressed to the person(s) on

11

          whom it is to be served, as set forth below, or as stated on the attached service list.

12

          (BY EMAIL) I caused the document on this date to be delivered by email to the
          offices of the addressee(s) set forth below, or as stated on the attached service list.

13

14

          (BY OVERNIGHT DELIVERY) I caused such envelope(s) to be delivered to an
          overnight delivery carrier with delivery fees provided for, addressed to the person(s)

15

          on whom it is to be served, as set forth below, or as stated on the attached service list.

16

17

I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

18

19

Executed on August 30, 2017 at San Francisco, California.

20

21

   /s/ James A. Hennefer

22

James A. Hennefer

23

24

25

26

27

28